IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SAUNDRA MCDANIEL,

                Plaintiff,

    v.                                                    1:14-cv-2337-WSD

WELLS FARGO BANK, N.A. and
AMERICAN RESIDENTIAL
LEASING CO.,

                Defendants.

## OPINION AND ORDER

This matter is before the Court on American Residential Leasing Company's ("ARLC") and Wells Fargo Bank, N.A.'s ("Wells Fargo") (together, "Defendants") Motions to Dismiss [17, 18] Saundra McDaniel's ("Plaintiff") Amended Complaint [16].

## I.    BACKGROUND

On July 18, 2003, Plaintiff obtained a loan in the amount of $179,188.00, from Infinity Mortgage Corporation d/b/a RES-COM Financial ("Infinity") and executed a promissory note ("Note") in favor of Infinity.  (Am. Compl. ¶¶ 8-9 & Ex. B).  Section 6(B) of the Note provides, in relevant part:

> If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary [of the Department of Housing and Urban Development ("HUD")] in

case of payment defaults, require immediate payment in full of the
principal balance remaining due and all accrued interest. . . .  In many
circumstances regulations issued by the Secretary will limit Lender's
rights to require immediate payment in full in the case of payment
defaults.  This Note does not authorize acceleration when not
permitted by HUD regulations.

(Am. Compl. ¶ 18).[1]

Repayment of the loan was secured by a deed ("Security Deed") to real
property located at 3032 Chesterfield Court, Snellville, Georgia (the "Property").
(Id. ¶ 9 & Ex. A).  Under the terms of the Security Deed, Plaintiff "grant[ed] and
convey[ed] to [Infinity] and [Infinity's] successors and assigns, with power of sale,
the [Property]."  (Security Deed at 1-2).  The Security Deed also provides, in
pertinent part:

9.  Grounds for Acceleration of Debt.

(a) Default.  Lender may, except as limited by regulations issued by
the Secretary in the case of payment defaults, require immediate
payment in full of all sums secured by this Security [Deed] if:

(i)  Borrower defaults by failing to pay in full any monthly
payment required by this Security [Deed] . . . .

. . .

(d) Regulations of HUD Secretary.  In many circumstances
regulations issued by the Security will limit Lender's rights, in the
case of payment defaults, to require immediate payment in full and

---

[1]      The copy of Plaintiff's Note attached to her Amended Complaint contains
only the first page.

> foreclose if not paid.  This Security [Deed] does not authorize
> acceleration or foreclosure if not permitted by regulations of the
> Secretary.

(Security Deed at 4).

On December 2, 2006, the Security Deed was assigned to Wells Fargo.

(Am. Compl. ¶ 12; Wells Fargo Mot. to Dismiss at Ex. C [18.4]).[2]

At some point, Plaintiff defaulted on her loan payments.  Plaintiff "urges

that Defendant Wells Fargo is responsible for her default by its failure to apply

credits for payments she has made on the account."  (Am. Compl. ¶ 13).  Plaintiff

asserts that "[o]ver the course of her loan Plaintiff has made multiple efforts in the

hope of securing an affordable loan modification and, ultimately, to retain the

home, including extensive correspondence and conversations with various Wells

---

[2]     Wells Fargo attached to its Motion to Dismiss a copy of the Assignment,
which was filed and recorded by the Clerk of Court for the Superior Court of
Gwinnett County.  This document is a matter of public record and the Court may
consider it.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 355
(2007) (on a motion to dismiss, court must consider the complaint and matters of
which it may take judicial notice); Bryant v. Avado Brands, Inc., 187 F.3d 1271,
1276-1278 (11th Cir. 1999) (court may take judicial notice of official public
records and may base its decision on a motion to dismiss on the information in
those records).  The Assignment was executed on December 2, 2006, and recorded
on December 18, 2006.  The Assignment was executed by "Washington Mutual
Bank F/K/A Washington Mutual Bank, FA" ("Washington Mutual").  It appears
that Infinity assigned the Security Deed to Washington Mutual, and on
December 2, 2006, Washington Mutual assigned the Security Deed to Wells Fargo.
Plaintiff does not challenge the validity of the Assignment and she does not argue
that Wells Fargo was not the holder of the Security Deed at the time of foreclosure.

Fargo personnel," but "Plaintiff's requests for an affordable loan modification or other reasonable workout options were denied."  (Id. ¶ 14).

Plaintiff asserts that "[s]ometime in June 2014, Wells Fargo initiated foreclosure proceedings against the Plaintiff."  (Id. ¶ 15).

On July 1, 2014, Wells Fargo conducted a foreclosure sale of the Property and ARLC was the purchaser.  (Id. ¶ 16).

On July 21, 2014, Plaintiff sent Wells Fargo a letter ("Letter") entitled "R.E.S.P.A. Qualified Written Request" ("QWR").  (Id. ¶¶ 75, 85 & Ex. C).  In the Letter, Plaintiff makes vague requests for documents and information related, and unrelated, to the servicing of her loan.  Plaintiff asserts that Wells Fargo "did not respond to Plaintiff's QWR, took no responsive action and undertook no investigation into the issue raised by Plaintiff's QWR."  (Am. Compl. ¶ 88).

On July 22, 2014, Plaintiff, proceeding *pro se*, filed her Complaint [1], asserting claims for declaratory judgment (Count 1), preliminary injunctive relief (Count 2), breach of contract (Count 3), negligence (Count 4), gross negligence (Count 5), negligence per se (Count 6), and theft by receiving (Count 7).  The crux of these claims is that Wells Fargo failed to comply with certain HUD regulations, incorporated by reference into Plaintiff's Note and Security Deed, and which are prerequisites to foreclosure.  Specifically, Plaintiff asserts that Wells Fargo failed

to comply with 24 C.F.R. § 203.604(b) because Wells Fargo "did not have a face-to-face interview with Plaintiff or make any effort whatsoever to arrange such a meeting prior to commencing foreclosure proceedings against the Plaintiff." (Am. Compl. ¶ 27; see also id. ¶¶ 33-37, 48-51, 54-55, 62-65).[3]

On March 3, 2015, Plaintiff amended her Complaint to add claims against Wells Fargo for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. (Count 8), and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. (Count 9),[4] based on Wells Fargo's alleged failure to respond to Plaintiff's July 21, 2014, Letter.  (Am. Compl. ¶¶ 73-89).[5]

On March 4 and 17, 2015, ARLC and Wells Fargo, respectively, moved to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted.  Although untimely, in view of Plaintiff's *pro se* status, the

---

[3]     Section 203.604(b) provides that "[t]he mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid."

[4]     Although Plaintiff's TILA claim is not numbered, it appears she intended to assert her TILA claim as Count 8, and her RESPA claim as Count 9.

[5]     On August 8 and 18, 2014, ARLC and Wells Fargo, respectively, moved to dismiss Plaintiff's original Complaint for failure to state a claim upon which relief can be granted.  Because the Court granted Plaintiff until September 19, 2014, to respond to Defendants' motions, Plaintiff was permitted to file her Amended Complaint as a matter of right, and the Court thus denied Defendants' motions to dismiss Plaintiff's original Complaint as moot.  (See March 3, 2015, Order [15]).

Court exercises its discretion to consider Plaintiff's "Response in Opposition to Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss" [19] ("Response").[6]

## II.   DISCUSSION

### A.   Legal Standard

Dismissal of a complaint, pursuant to Rule 12(b)(6), is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action."  Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc.,

---

[6]    On March 2, 2016, Plaintiff filed her Response and submitted a declaration, in which Plaintiff states:

> I forwarded my [Response] to the court for filing on May 4th, 2015 by placing the same in the U.S. Postal Mail, first Class [sic], properly stamped and addressed to the Clerk of the U.S. District Court, 75 Spring Street, Atlanta, GA 30303.  My opposition brief did not make it into the record.  Therefore, I am resubmitting it for filing and be [sic] considered nun [sic] pro tunc.

(Pl's Decl. [19.1]).  Wells Fargo filed its Motion to Dismiss on March 17, 2015, and Plaintiff's response was required to be filed on or before April 3, 2015.  See LR 7.1B (response to a motion other than a motion for summary judgment shall be filed not later than fourteen (14) days after service of the motion); Fed. R. Civ. P. 6(a).  Even if the Court had received it, Plaintiff's May 4, 2015, Response would have been untimely.

187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  The Court is not required to accept a

plaintiff's legal conclusions as true.  See Sinaltrainal v. Coca-Cola Co., 578 F.3d

1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)),

abrogated on other grounds by Mohamad v. Palestinian Auth., — U.S. —,

132 S. Ct. 1702 (2012).  The Court also will not "accept as true a legal conclusion

couched as a factual allegation."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544,

555 (2007).  The complaint, ultimately, is required to contain "enough facts to state

a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

　　　To state a plausible claim for relief, the plaintiff must plead factual content

that "allows the Court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  Iqbal, 556 U.S. at 678.  "Plausibility" requires more

than a "sheer possibility that a defendant has acted unlawfully," and a complaint

that alleges facts that are "merely consistent with" liability "stops short of the line

between possibility and plausibility of 'entitlement to relief.'"  Id. (citing

Twombly, 550 U.S. at 557); see also Arthur v. JP Morgan Chase Bank, NA,

569 F. App'x 669, 680 (11th Cir. 2014) (noting that Conley's "no set of facts"

standard has been overruled by Twombly, and a complaint must contain "sufficient

factual matter, accepted as true, to state a claim for relief that is plausible on its

face.").  "A complaint is insufficient if it 'tenders naked assertions devoid of

further factual enhancement.'"  Tropic Ocean Airways, Inc. v. Floyd,

598 F. App'x 608, 609 (11th Cir. 2014) (quoting Iqbal, 556 U.S. at 678).

"To survive a motion to dismiss, plaintiffs must do more than merely state

legal conclusions; they are required to allege some specific factual bases for those

conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms.,

372 F.3d 1250, 1263 (11th Cir. 2004); see also White v. Bank of America, NA,

597 F. App'x 1015, 1017 (11th Cir. 2014) ("[C]onclusory allegations, unwarranted

deductions of facts or legal conclusions masquerading as facts will not prevent

dismissal.") (quoting Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188

(11th Cir. 2002)).

Complaints filed by *pro se* litigants are to be liberally construed and are

"held to less stringent standards than formal pleadings drafted by lawyers."

Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations and internal quotation marks

omitted).  Nevertheless, a *pro se* plaintiff must comply with the threshold

requirements of the Federal Rules of Civil Procedure.  "Even though a *pro se*

complaint should be construed liberally, a *pro se* complaint still must state a claim

upon which the Court can grant relief."  Grigsby v. Thomas, 506 F. Supp. 2d 26,

28 (D.D.C. 2007).  "[A] district court does not have license to rewrite a deficient

pleading."  Osahar v. U.S. Postal Serv., 297 F. App'x 863, 864 (11th Cir. 2008).

B.     Analysis

      1.     Breach of Contract (Count 3)

To assert a claim for breach of contract under Georgia law, a plaintiff must show (1) a valid contract; (2) material breach of its terms; and (3) damages arising from that breach.  See Budget Rent-A-Car of Atlanta, Inc. v. Webb, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996); see also Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 (11th Cir. 2014).

Plaintiff alleges that Wells Fargo breached the Note and Security Deed by failing to conduct a face-to-face meeting with Plaintiff before initiating foreclosure proceedings.  Plaintiff claims that advertisement of the Property for foreclosure "cause[ed] Plaintiff embarrassment, mental anguish and emotional distress."  (Am. Compl. ¶ 52).  Damages for mental anguish and emotional pain and suffering cannot be recovered in a breach of contract claim.  See Davis v. Aetna Cas. & Sur. Co., 314 S.E.2d 913, 917-918 (Ga. Ct .App. 1984), rev'd in part on other grounds, 320 S.E.2d 368 (Ga. 1984); Cummings v. Prudential Ins. Co. of Am., 542 F. Supp. 838, 841 (S.D. Ga. 1982) (under Georgia law, damages for mental suffering arising out of breach of contract, absent breach of a duty independent of contract, are not recoverable).

It is undisputed that Plaintiff had already defaulted on her loan obligations

when the alleged breach occurred, and Plaintiff does not allege any facts to show that a face-to-face meeting would have prevented foreclosure.  Plaintiff alleges that "[o]ver the course of her loan Plaintiff has made multiple efforts in the hope of securing an affordable loan modification and, ultimately, to retain the home, including extensive correspondence and conversations with various Wells Fargo personnel," but "Plaintiff's requests for an affordable loan modification or other reasonable workout options were denied."  (Am. Compl. ¶ 14).  That Wells Fargo reported Plaintiff's default to credit bureaus and advertised the Property for foreclosure sale was the result of Plaintiff's failure to make her loan payments, not the result of Wells Fargo's alleged breach.  See Bates, 768 F.3d at 1132-33 (Mortgagor "must show that the premature or improper exercise of some power under the deed . . . resulted in damages that would not have occurred but for the breach."); Rourk v. Bank of Am., N.A., 587 F. App'x 597 (11th Cir. 2014) (Mortgagor's failure to make loan payments "is fatal to her claim for breach of contract and wrongful foreclosure, as her 'alleged injury was solely attributable to her own acts or omissions.'") (quoting Heritage Creek Dev. Corp. v. Colonial Bank, 601 S.E.2d 842, 845 (Ga. Ct. App. 2004)).  Plaintiff fails to show that she suffered damages caused by Wells Fargo's alleged breach of contract, and this claim is required to be dismissed.

2.     Negligence (Counts 4, 5 and 6)

A plaintiff asserting a claim for negligence under Georgia law must establish: (1) the existence of a duty on the part of the defendant, (2) a breach of that duty, (3) causation, and (4) damages.  Rasnick v. Krishna Hospitality, Inc., 713 S.E.2d 835, 837 (Ga. 2011) (citing John Crane, Inc. v. Jones, 604 S.E.2d 822, 825 (Ga. 2004)).

Plaintiff asserts that Wells Fargo "owed an independent duty to Plaintiff, as imposed by HUD regulations, to have a face-to-face interview with Plaintiff prior to commencing foreclosure proceedings."  (Am. Compl. ¶¶ 54-56).  Plaintiff also asserts that Wells Fargo failed "to correct its mishandling of Plaintiff's mortgage loan" and failed "to ensure that Plaintiff was not needlessly injured by Wells Fargo's mistakes."  (Id. ¶¶ 59-60).  Plaintiff contends further that Wells Fargo failed to comply with 24 C.F.R. § 203.604(b) and that "[s]uch conduct constitutes negligence per se."  (Id. ¶¶ 62-65).

There is no private right of action for violation of HUD regulations, see Bates, 768 F.3d at 1130 (citing Roberts v. Cameron-Brown, 556 F.2d 356, 360 (5th Cir. 1977)), and the negligent acts alleged by Plaintiff against Wells Fargo all arise from the duties created by the Note and Security Deed.  Georgia law is clear that "[a]bsent a legal duty beyond the contract, no action in tort may lie upon an

alleged breach of [a] contractual duty." Wallace v. State Farm Fire & Cas. Co., 539 S.E.2d 509, 512 (Ga. Ct. App. 2000). Because Plaintiff fails to show that Wells Fargo breached a duty it owed to Plaintiff independent of the Note and Security Deed, Plaintiff cannot state a claim for negligence against Wells Fargo. See id.; Fielbon Dev. Co. v. Colony Bank of Houston Cnty., 660 S.E.2d 801, 808 (Ga. Ct. App. 2008) ("A defendant's mere negligent performance of a contractual duty does not create a tort cause of action; rather, a defendant's breach of a contract may give rise to a tort cause of action only if the defendant has also breached an independent duty created by statute or common law."). Plaintiffs' negligence claims are required to be dismissed.[7]

---

[7] To the extent Plaintiff appears to argue, for the first time in her Response, that O.C.G.A. § 51-1-6 provides a mechanism for her to assert a claim based on violation of HUD regulations and the National Housing Act, this argument was not raised in Plaintiff's Amended Complaint and the Court will not consider it. See Huls v. Liabona, 437 F. App'x 830, 832 n.4 (11th Cir. 2011) (per curium) (argument not properly raised where plaintiff asserted it for the first time in response to defendant's motion to dismiss, instead of seeking leave to file an amended complaint). Even if it was properly before the Court, Plaintiff cannot assert a claim for violation of HUD regulations or the National Housing Act under O.C.G.A. § 51-1-6 because a cause of action—breach of contract—already exists to remedy the violations alleged, and, because is well-settled that "the National Housing Act and the regulations promulgated thereunder deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow," the Court declines to create one. See Roberts, 556 F.2d at 360; Miller v. Gen. Wholesale Co., Inc., 101 F. Supp. 2d 1374 (N.D. Ga. 2000) ("It seems clear from the language of [O.C.G.A. § 51-1-6] that no cause of action is created where, as here, an express

### 3.    Theft by Receiving (Count 7)

Defendants argue that Plaintiff's theft by receiving claim should be dismissed because theft by receiving is a criminal offense without a private cause of action.  Defendants argue further that, to the extent Plaintiff intended to assert a claim for conversion, conversion does not apply to real property, and even if it did, Plaintiff fails to allege any facts to support a claim for conversion.  (ARLC Br. in Supp. of Mot. to Dismiss [17] at 12-13; Wells Fargo Br. in Supp. of Mot. to Dismiss [18.1] at 10-11).  In her Response, Plaintiff does not oppose, or otherwise respond to, Defendants' arguments.  Failure to respond to an opposing party's argument results in abandonment of the claim.  See Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) ("Because plaintiff has failed to respond to this argument or otherwise address this claim, the Court deems it abandoned."); see also LR 7.1(B), NDGa ("Failure to file a response shall indicate that there is no opposition to the motion.").  Plaintiff abandoned her claim for theft by receiving and this claim is required to be dismissed.[8]

------

cause of action already exists."); cf. Moses v. Banco Mortg. Co., 778 F.2d 267, 272 n.2 (5th Cir. 1985) (collecting cases holding that National Housing Act and regulations do not provide private cause of action and refusing to create one).

[8]    Even if she had not abandoned it, Plaintiff's claim for theft by receiving must be dismissed because it is based on a criminal statute.  See O.C.G.A. § 16-8-7 ("A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know

4.    TILA (Count 8)

Wells Fargo argues that Plaintiff's TILA claim should be dismissed because it is based on Wells Fargo's alleged failure to respond to Plaintiff's purported QWR.  Wells Fargo contends that, because "a QWR is a mechanism promulgated by [RESPA,] it cannot provide the basis for a TILA violation."  (Wells Fargo Br. in Supp. of Mot. to Dismiss [18.1] at 11-12).  In her Response, Plaintiff does not oppose, or otherwise respond to, Wells Fargo's arguments.  See Bute, 998 F. Supp. at 1477; LR 7.1(B), NDGa.  Plaintiff abandoned her TILA claim and this claim is required to be dismissed.[9]

---

was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner.").  O.C.G.A. § 16-8-7 does not provide for a civil remedy and a civil remedy cannot be implied to arise from a violation of that criminal statute.  See Am. Gen. Life & Acc. Ins. Co. v. Ward, 509 F. Supp. 2d 1324, 1330 (N.D. Ga. 2007) (citing Oswald v. Am. Nat'l Can Co., 392 S.E.2d 23, 27 (Ga. Ct. App. 1990) & Rolleston v. Huie, 400 S.E.2d 349, 351 (Ga. Ct. App. 1990)) ("Under Georgia law, the violation of a criminal statute does not automatically give rise to a civil cause of action.  Instead, where a criminal statute evidences no intent to create a private cause of action, civil liability must be determined under the applicable provisions of tort law, if any.") (internal quotation marks and citations omitted).  To the extent Plaintiff asserts that "theft by receiving is analogous to the civil tort of conversion" (Am. Compl. ¶ 68), Plaintiff cannot state a claim for conversion because the property Defendants allegedly converted is Plaintiff's home, and under Georgia law, "[c]onversion does not apply to real property."  See Chung v. JPMorgan Chase Bank, N.A., 976 F. Supp. 2d 1333, 1347 (N.D. Ga. 2013) (citing Levenson v. Ward, 668 S.E.2d 763 (Ga. Ct. App. 2008) ("An action for conversion and trover will not lie to recover real property.")).

[9]    Even if she had not abandoned it, Plaintiff fails to state a claim for violation of TILA.  That Wells Fargo foreclosed on the Property three (3) weeks before

5.   RESPA (Count 9)

To state a claim for relief under RESPA, a plaintiff must allege that "(1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid QWR, (3) the defendant failed to adequately respond within the statutory period, and (4) the plaintiff is entitled to actual or statutory damages."  Tonea v. Bank of Am., N.A., 6 F. Supp. 3d 1331, 1346 (N.D. Ga. 2014) (citing 12 U.S.C. § 2605(e)). RESPA defines a QWR as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that requests information relating to the servicing of a loan.  12 U.S.C. § 2605(e)(1)(B). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts

---

Plaintiff sent her July 1, 2014, Letter, undermines Plaintiff's claim that, because Wells Fargo failed to respond to her request for the "true identity of the owner of Plaintiffs' [sic] loan," "Plaintiff has been damaged because she was unable to negotiate a settlement with the true owner of her obligation."  (Am. Compl. ¶¶ 77, 81).  Plaintiff's assertion that she "made multiple efforts in the hope of securing an affordable loan modification . . . including extensive correspondence and conversations with various Wells Fargo personnel," but her "requests for an affordable loan modification or other reasonable workout options were denied," further undermines her claimed damages.  (Id. ¶ 14).  It appears that, on December 2, 2006, under the terms of the Assignment, Wells Fargo became the holder of Plaintiff's Note and Security Deed.  (See Assignment at 1 (stating that the Security Deed, "together with the certain note(s) described therein together with all interest secured thereby, all liens, and any rights due or to become due thereon," were assigned to Wells Fargo)).  Plaintiff does not contend, and it does not appear, that other than Wells Fargo owns Plaintiff's loan.

. . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."  12 U.S.C. § 2605(i)(3).  A valid QWR must:

> (i) include[], or otherwise enable[] the servicer to identify, the name and account of the borrower; and

> (ii) include[] a statement of the reasons for the belief of the borrower . . . that the account is in error or provide[] sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  A loan servicer has a duty to respond to a borrower's QWR or inquiries related to the servicing of a borrower's loan.  12 U.S.C. § 2605(e); Mallaly v. BAC Loan Serv., LLC, No. 3:10-cv-0074, 2010 WL 5140626, at *7 (N.D. Ga. Oct. 6, 2010) (King, M.J.) adopted at 2010 WL 5140031 (N.D. Ga. Dec. 13, 2010) (Hunt, J.) (citing 12 § U.S.C. 2605(e)).  "If the servicer does not comply with RESPA's deadlines, the borrower can recover actual damages from the failure to communicate, but the borrower is limited to actual damages unless there is a 'pattern or practice of noncompliance.'" Marks v. PHH Mortg. Corp., No. 5:11-cv-167 (CAR), 2011 WL 5439164, at *3 (M.D. Ga. Nov. 9, 2011) (citing 12 U.S.C. § 2605(f)).  To show actual damages, a plaintiff must "demonstrate that [d]efendant's breach proximately caused the alleged damages."  Russell v. Nationstar Mortg., LLC, No. 14-61977-CIV, 2015 WL 5029346, at *6 (S.D. Fla. Aug. 26, 2015).

Here, assuming that Plaintiff's July 21, 2014, Letter constitutes a valid QWR under RESPA,[10] Plaintiff fails to allege facts to support that Wells Fargo's failure to respond caused her claimed damages.  Plaintiff asserts that she "has been damaged by not having all monies [sic] properly credited to their [sic] mortgage loan account," and that she "would not have been in default if she had received all credits for the money she has paid on her mortgage loan account."  (Am. Compl. ¶¶ 86-87).  It is undisputed that, when Plaintiff sent her July 21, 2014, Letter, Plaintiff had already defaulted on her loan payments, and Wells Fargo had already foreclosed on the Property.  Plaintiff fails to show that Wells Fargo's failure to respond to her July 21, 2014, Letter caused her claimed damages.  See, e.g., Thepvongsa v. Reg'l Tr. Servs. Corp., 972 F. Supp. 2d 1221, 1229 (W.D. Wash. Sept. 25, 2013) ("[p]laintiff has not identified actual damages suffered as a result of [servicer's] failure to respond adequately to the QWR" because "[t]he lack of information did not cause plaintiff to send his payments to the wrong entity, for example, or result in the accrual of late fees or penalties that could have been

---

[10]   The Court notes that Plaintiff's Letter contains twenty-five (25) demands for information, the majority of are not related to the servicing of her loan.  Although Plaintiff's Letter states that it is a QWR under RESPA and that "there appears to be discrepancies as to how the mortgage loan account has been serviced and how credits for money [she] paid have been applied to the mortgage loan account," Plaintiff's Letter does not state any "reasons for the belief of the borrower . . . that the account is in error," as required under Section 2605(e)(1)(B)(ii).  (See Letter at 1).  Plaintiff's Letter is doubtfully sufficient to trigger a response under RESPA.

avoided had defendants timely responded [because] *plaintiff was already in default when the QWR was sent*") (emphasis added); Brothers v. Bank of Am., N.A., No. 5:12-cv-3121-EJD, 2012 WL 4471590, at *3 (N.D. Cal. Sept. 26, 2012) (claim that plaintiff was "damaged in the amount of ongoing penalties, fees and interest charged by [d]efendants" not sufficient to state a RESPA claim for failure to respond to QWR because "[t]hese damages do not flow from any lack of response to the QWR; to the contrary, these 'damages' are a result of [p]laintiff's failure to make loan payments"); Russell, 2015 WL 5029346, at *6 ("Conclusory and speculative allegations about the effects of failure to respond to a QWR's 'laundry list' of request for information are insufficient in the absence of showing how the failure to respond to the QWR[] caused any of these things.").

Plaintiff fails to allege facts to support that Wells Fargo's failure to respond to her Letter caused her claimed damages, and Plaintiff does not otherwise assert that Wells Fargo engaged in a pattern or practice of violating RESPA such that she could recover statutory damages.  See 12 U.S.C. §§ 2605(f)(1)(A)-(f)(1)(B); Frazile v. EMC Mortg. Corp., 382 F. App'x 833, 836 (11th Cir. 2010) (allegation of damages is a necessary element of any claim under Section 2605); Tonea, 6 F. Supp. 3d at 1346; Marks, 2011 WL 5439164 at *3.  Plaintiff fails to state a claim for violation of RESPA, and this claim is required to be dismissed.

6.     Declaratory Judgment (Count 1)

"[T]o pursue properly a declaratory judgment under Georgia law 'a party must establish that a declaratory judgment is necessary to relieve himself of the risk of taking some future action that, without direction, would jeopardize his interests.'" Milani v. One West Bank FSB, 491 F. App'x 977, 979 (11th Cir. 2012) (quoting Porter v. Houghton, 542 S.E.2d 491, 492 (Ga. 2001)).

Plaintiff seeks a declaration that Wells Fargo did not have a face-to-face interview with Plaintiff before foreclosure, that as a result, Wells Fargo did not comply with HUD requirements or the Security Deed, and foreclosure was therefore premature.  (Am. Compl. ¶¶ 33-35).  Plaintiff has already defaulted on her loan obligations, and it is undisputed that Wells Fargo already allegedly breached the Security Deed and foreclosed on the Property.  No uncertainty exists about any future action by Plaintiff which might affect her interests.  A declaratory judgment is unavailable because "all material rights have accrued based on past events." See Milani, 491 F. App'x at 979.  In her Amended Complaint, Plaintiff seeks, in effect, "an advisory opinion as to whether, based upon past events, [she] would prevail on the merits if [she] file[d] an action at law or equity to establish" that foreclosure was wrongful.  See Logan Paving Co. v. Peoples Bank & Trust,

395 S.E.2d 287, 288 (Ga. Ct. App. 1990).  Plaintiff fails to state a claim for

declaratory judgment, and this claim is required to be dismissed.

> 7.    Injunctive Relief (Count 2)

A claim for preliminary injunctive relief requires a showing of "a substantial

likelihood of success on the merits of the underlying case," Grizzle v. Kemp,

634 F.3d 1314, 1320 (11th Cir. 2011), while a permanent injunction requires actual

success on the merits, United States v. Endotec, Inc., 563 F.3d 1187, 1194

(11th Cir. 2009).  Because Plaintiff fails to state a viable claim for relief, her claim

for injunctive relief is required to be dismissed.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that American Residential Leasing

Company's and Wells Fargo Bank, N.A.'s Motions to Dismiss [17, 18] Plaintiff's

Amended Complaint are **GRANTED.**


**SO ORDERED** this 16th day of March, 2016.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

20